J-S77034-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TERON UTSEY, | : | |
| | : | |
| Appellant | : | No. 1676 EDA 2014 |

Appeal from the Judgment of Sentence Entered April 28, 2014,
in the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0003508-2012

BEFORE:  STABILE, JENKINS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED FEBRUARY 05, 2015**

Teron Utsey (Appellant) appeals from the judgment of sentence entered on April 28, 2014, following his conviction for burglary and conspiracy to commit robbery.  We affirm.

The trial court summarized the underlying facts of this matter as follows:

> Appellant's convictions arose out of an early morning brutal home invasion.  On March 26, 2011, Appellant and several co-conspirators agreed that they would ste[a]l money and pills from the victim, Scott Hopper, at his residence located at 145 East Moreland Avenue, Hatboro, Montgomery County.  Appellant was armed with a semi-automatic gun and a co-conspirator was armed with a crow-bar.  The victim sustained serious injuries.
>
> On January 22, 2014, Appellant's trial commenced.  At trial, the Commonwealth presented the testimony of two investigating police officers, Sergeant Mark Ru[e]gg and Detective Sergeant Cameron Goold[;] the victim, Scott Hopper[;]  and two of Appellant's co-conspirators, Michael

* Retired Senior Judge assigned to the Superior Court.

Wroblewski ([Wroblewski]) and Troy Schussler ([Schussler]). After the evidence was presented, the jury returned a verdict of guilty of burglary and conspiracy, and not guilty of robbery, terroristic threats and firearms not to be carried without a license.

On April 28, 2014, [the trial court] sentenced Appellant. A timely post-sentence motion was filed, and ultimately denied on May 8, 2014. This appeal followed on May 28, 2014.

Trial Court Opinion, 6/16/2014, at 1-2.

Appellant presents the following issues for our consideration:

[1.] Whether the evidence presented at trial was insufficient as a matter of law to establish beyond a reasonable doubt that … Appellant entered the premises of Scott Hopper with the intent to commit a crime therein and /or the weight of the evidence presented demonstrated a reasonable doubt to whether [Appellant] had committed the crimes charged and the court committed an error of law and abuse of discretion in finding [Appellant] guilty of the crimes charged.

[2.] Whether the trial court committed an error of law and/or abuse of discretion in giving a flight/consciousness of guilt jury instruction based upon the fact that [Appellant] had removed a GPS ankle monitor and had failed to appear at a court proceeding.

Appellant's Brief at unnumbered page 4 (unnecessary capitalization and trial court answers omitted).

We consider Appellant's sufficiency claim mindful of the following.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every

- 2 -

possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559–60 (Pa. Super. 2011) (*en banc*) (quoting *Commonwealth v. Hutchinson*, 947 A.2d 800, 805-06 (Pa. Super. 2008)).

At the time that Appellant committed the present crimes, burglary was defined as follows: "A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa.C.S. § 3502(a) (superceded).

A conspiracy conviction requires proof of (1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy. Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, i.e., the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.

*Commonwealth v. Poland*, 26 A.3d 518, 521 (Pa. Super. 2011) (quoting *Commonwealth v. Galindes*, 786 A.2d 1004, 1010 (Pa. Super. 2001)).

The offense underlying the conspiracy was robbery, "which requires proof, in relevant part, that in the course of committing a theft, the defendant threatened another with or intentionally put another in fear of immediate serious bodily injury." *Commonwealth v. Tejada*, __ A.3d __, 2015 WL 62931, *3 n.4 (Pa. Super. filed January 6, 2015) (citing 18 Pa.C.S. § 3701(a)(1)(ii)).

Appellant argues that "[t]he jury's verdict in finding … [Appellant] not guilty of robbery, terroristic threats and the firearms charge simple [*sic*] demonstrate[s] that the evidence was insufficient as a matter of law to find … Appellant guilty of burglary and conspiracy." Appellant's Brief at unnumbered page 7 (unnecessary capitalization omitted). Appellant fails to cite any legal authority in support of this claim, and we conclude that it is without merit. "Consistency in criminal verdicts is not necessary, and logical inconsistencies will not serve as grounds for reversal. Inconsistent verdicts are proper so long as the evidence is sufficient to support the convictions the jury has returned." *Commonwealth v. Maute*, 485 A.2d 1138, 1145 (Pa. Super. 1984) (citation omitted).

The relevant testimony presented at trial is as follows. Wroblewski testified that on March 25, 2011, in the course of driving around and trying to figure out plans for the night, "KG" told Wroblewski and some others about "this guy that had some money and some drugs and stuff in his house." N.T., 1/22/2014, at 49-51. They talked about the "whole

situation," meaning the man with the money and pills, and Robert Johnson a/k/a "J" made some phone calls looking for someone with a gun. *Id.* at 47, 51-52. After driving to various locations and retrieving a trash bag and a crowbar, the group continued to drive around until J could locate someone with a gun. *Id.* at 52-53. After J located someone, they went to a Starbucks parking lot in Doylestown, where J got out of the van to meet Appellant. *Id.* at 53. Subsequently, they followed Appellant back to his house. *Id.* at 54. When they arrived, Appellant got out of his car, got a gun from the trunk of his car, and put it in his waistband. *Id.* at 56-57. They proceeded to an upstairs bedroom in Appellant's house, where they discussed "how it was going to go down" and grabbed stuff they needed, such as masks. *Id.* at 57-59. Appellant had changed into dark clothing. *Id.* at 59. Then, Appellant, Schussler, J, KG, and Wroblewski left for Horsham. *Id.* at 59-60.

Wroblewski further testified that once in Horsham, they parked down the street from Hopper's home. *Id.* at 60-61. Wroblewski, KG, and Appellant got out of the van and walked up to Hopper's home. *Id.* KG got into the house through a window, then opened the back door to let Appellant and Wroblewski inside the house. *Id.* at 62. Wroblewski waited by the back door for lookout, and KG and Appellant went upstairs. *Id.* Wroblewski heard two gunshots. *Id.* at 62-63.

Schussler testified that after being turned away from a pub on the night in question, he and some others eventually met Appellant in front of a Starbucks in Doylestown. N.T., 1/23/2014, at 4-7. Then, Appellant got into Schussler's van, and they went to Hatboro. *Id.* at 7. When they arrived, Appellant, KG, who had a crowbar, and Wroblewski got out of the vehicle, while Schussler and J remained in the vehicle. *Id.* at 7-8.

Schussler testified that after the men exited the vehicle, Schussler and J drove around the block, went to Wawa, and then parked at the end of the street. *Id.* at 8. While sitting in the vehicle, Schussler heard two or three loud bangs that sounded like gunshots. *Id.* After about 15 or 20 minutes, Wroblewski came out with a safe along with Appellant. *Id.* They left and went to Warminster, to Appellant's house. *Id.* at 8-9. Schussler testified that, at his house, he saw Appellant with a semi-automatic type gun. *Id.* at 10.

Hopper testified that on the night of March 25, 2011, his girlfriend went out while he stayed home and watched TV. N.T., 1/22/2014, at 32-33. He had gone to bed sometime after midnight and was startled awake by two fully masked intruders, one armed with a crowbar and one armed with a semi-automatic gun. *Id.* at 33-35. The masked intruders started yelling at Hopper, demanding money and a safe. *Id.* at 35. Hopper was in fear for his life and a struggle ensued, where Hopper was beaten about the head and body. *Id.* at 36-37. During the course of that struggle, two gunshots were

discharged into the ceiling by one of the masked men. *Id.* at 36. Hopper testified that the assailants took a safe with them. *Id.* at 38, 45.

This evidence, viewed in the light most favorable to the Commonwealth, establishes that Appellant participated in the planning of the invasion of Hopper's home for money and drugs. Appellant supplied the gun and the masks and had dressed in dark clothing in preparation for the home invasion. Appellant then surreptitiously entered the house and participated in the attack of Hopper while demanding money and a safe. Based on the foregoing, it is clear that the Commonwealth proved the necessary elements of the crimes that Appellant challenges on appeal.

Appellant also argues that the verdicts were against the weight of the evidence. Our standard of review is well-settled:

> The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.
>
> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.

Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

*Commonwealth v. Street*, 69 A.3d 628, 633 (Pa. Super. 2013) (quoting *Commonwealth v. West*, 937 A.2d 516, 521 (Pa. Super. 2007)).

Appellant essentially argues that his convictions were based solely on the testimony of his co-conspirators, which the jury clearly did not believe as evidenced by his acquittals on other charges. Appellant also notes that there was no DNA evidence or other credible corroborating evidence establishing his guilt, particularly in light of those acquittals.

Appellant's contention consists of nothing more than a variation of his unavailing sufficiency argument and a challenge to the credibility determinations made by the jury. It is well settled that the jury is "free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. McCloskey*, 835 A.2d 801, 809 (Pa. Super. 2003).[1] In concluding that the weight of the evidence supported the jury's verdict, the trial court explained that Appellant attempted to attack

---

[1] In this regard, we disagree with Appellant's contention that, as evidenced by the acquittals, the jury clearly disbelieved the co-conspirators' testimony. *See Commonwealth v. Maxwell*, 421 A.2d 699, 702 (Pa. Super. 1980) ("The fact that the verdicts may be interpreted to reflect the jury's disbelief of, or doubt about, some of the victim's testimony concerning [one] incident does not mean that the jury could not believe the victim's testimony concerning [another] incident. The jury was not required to find all of her testimony either worthy or unworthy of disbelief; it was entitled to believe all, part, or none of the testimony.").

the credibility of the co-conspirators at trial, but that "the evidence that the jury believed and to which both [Wroblewski] and [Schussler] were consistent on was that Appellant was involved in the planning and commission of the home invasion. Defense counsel's attempts at attacking their credibility did not sway the jury." Trial Court Opinion, 6/16/2014, at 9. We discern no abuse of discretion in the trial court's determination and, thus, Appellant is not entitled to relief on his weight-of-the-evidence claim.

Finally, relying upon **Commonwealth v. Babbs**, 499 A.2d 1111 (Pa. Super. 1985), Appellant argues that it was improper for the trial court to give a flight/consciousness of guilt instruction on the basis that Appellant failed to appear for trial. Appellant contends that the stipulated evidence regarding his failure to appear did not show that he was attempting to avoid prosecution or hide from law enforcement.

We review jury instructions with deference to the trial court and may reverse the lower court only where it abused its discretion or committed an error of law. **Commonwealth v. Hornberger**, 74 A.3d 279, 282 (Pa. Super. 2013).

> [W]hen reviewing jury instructions for error, the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.

**Id.** at 283 (quoting **Commonwealth v. Sepulveda**, 55 A.3d 1108, 1141 (Pa. 2012)).

In **Babbs**, a panel of this Court observed:

> The rule of law in this Commonwealth is that "[w]hen a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis in connection with other proof from which guilt may be inferred." This rule has not heretofore been expanded to permit an inference of guilt merely because a defendant has failed to appear for trial. A failure to appear on the day set for trial does not have the same connotation as pre-arrest flight or concealment and cannot be said to point unerringly to consciousness of guilt.

**Babbs**, 499 A.2d at 1113 (citations omitted) (quoting **Commonwealth v. Coyle**, 203 A.2d 782, 789 (1964)).  Applying this rule to the facts before it, the **Babbs** Court held that the defendant's absence did not suggest guilt:

> In the instant case, appellant did not flee or conceal his whereabouts either prior to or at any time after arrest. After appellant had appeared on several occasions, he failed to appear on a continued trial date. He did not flee or conceal himself, however, and was found shortly thereafter at his known residence. He said that he had failed to appear on the continued trial date because of a dispute with his attorney. We perceive in these circumstances no basis for drawing an inference that appellant's failure to appear on the continued trial date was attributable to a consciousness of guilt.
>
> ***
>
> … There was not a necessary connection between a mere post-arrest failure to appear for trial and consciousness of guilt. This is particularly true where, as here, the failure to appear was not accompanied by flight and the defendant did not move from or leave his known, permanent place of residence. Therefore, we will reverse and remand for a new trial free from the unavoidable prejudice caused by the irrelevant evidence that appellant had on an earlier occasion failed to appear for trial.

**Babbs**, 499 A.2d at 1114.

- 10 -

Nevertheless, this Court has observed that a trial court could properly instruct a jury on consciousness of guilt under circumstances wherein a defendant's failure to appear is accompanied by evidence of flight or concealment. For example, in *Commonwealth v. Carter*, 597 A.2d 1156 (Pa. Super. 1991), this Court distinguished *Babbs*, explaining that in *Carter*,

> [t]he Commonwealth's evidence was not limited merely to appellant's failure to appear when the case was called for trial. Rather, the Commonwealth's evidence was that appellant had failed to appear for a scheduled trial date on July 5, 1978, that a bench warrant had been issued for his arrest, and that he had not been apprehended until July 20, 1979. On that date, moreover, appellant attempted to avoid apprehension by giving police a false name. This evidence was sufficient to permit an inference that appellant had fled, and/or concealed his whereabouts to avoid prosecution. On this basis, the trial court could properly instruct the jury that an adverse inference could be drawn. See and compare: *Commonwealth v. Knox*, 290 Pa.Super. 104, 108 n. 3, 434 A.2d 151, 153 n. 3 (1981) (evidence of defendant's failure to appear for trial and eventual apprehension four months later properly received to establish consciousness of guilt); *Commonwealth v. Smith*, 250 Pa.Super. 460, 467-468, 378 A.2d 1239, 1243 (1977) (defendant's flight from jurisdiction after posting bond was properly received as evidence of consciousness of guilt); *Commonwealth v. Myers*, 131 Pa.Super. 258, 264-265, 200 A. 143, 146 (1938) (evidence of defendant's failure to appear for trial, issuance of bench warrant for his arrest, efforts of police to locate him and his apprehension approximately six months later was properly received as evidence of consciousness of guilt; "flight" includes not only leaving the jurisdiction, but also any concealment to avoid arrest or prosecution).

*Carter*, 597 A.2d at 1160-61.

Here, we discern no error or abuse of discretion in the trial court's decision to instruct the jury on flight/consciousness of guilt. The evidence

- 11 -

relevant to this issue was read to the jury in the form of the following stipulation:

On October 18, 2012, the defendant, Teron Utsey, was on bail for the current charges. A condition of bail was that he remain under house arrest. An individual under house arrest must wear a GPS monitoring device.

In March of 2013 it was determined that the GPS ankle bracelet had been removed from the defendant's ankle. In September 2013 the defendant was apprehended in New York.

N.T., 1/23/2014, at 41.

The court's instruction to the jury as it pertained to flight/consciousness of guilt was as follows:

You heard evidence by way of the stipulation that the defendant fled to avoid prosecution of this case. Generally speaking, when a crime has been committed and a person is charged with that offense, and flees the jurisdiction, such flight is a circumstance tending to prove that the person is conscious of guilt. Such flight or concealment does not show consciousness of guilt in every case. A person may flee for some other motive, and may do so even though innocent.

Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case, and especially upon the motives that may have prompted the flight or concealment. You may not find a defendant guilty solely on the basis of evidence of flight.

N.T., 1/23/2014, at 58.

The above stipulation established that Appellant was aware of the charges against him and was restricted to house arrest while awaiting trial. Moreover, the stipulation demonstrated that Appellant subsequently removed his GPS monitoring device and was apprehended outside of the

- 12 -

jurisdiction several months later. Based on the evidence of record, the trial court properly charged the jury on flight/consciousness of guilt.

Because none of Appellant's issues warrants relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/5/2015